WESLEY WENZEL EITEN, a/k/a Edward W. Eiten, Plaintiff-Appellant, *v.* MYRA M. EITEN *et al.*, Defendants-Appellees.

Third District    No. 76-116

Opinion filed November 24, 1976.—Rehearing denied December 29, 1976.

James Regnier, of Fearer and Nye, of Rochelle, for appellant.

Wayne Whalen, of Herbolsheimer, Lannon & Henson, of La Salle, and Ernest Pool, Jr., of Pool & Pool, of Ottawa, for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of La Salle County granting a motion for summary decree in a partition action instituted by the plaintiff, Wesley Wenzel Eiten, a/k/a Edward W. Eiten, as against Myra M. Eiten and others. Plaintiff had claimed to be the owner of an undivided one-half interest in the premises under the will of Thomas Eiten, who died on March 16, 1947. The issue before the court is what estate, if any, did plaintiff inherit from Thomas Eiten, the decedent.

It appears from the record that Thomas Eiten died on March 16, 1947, leaving a will dated April 25, 1945, which was modified by a codicil, dated January 17, 1947. Paragraph 5 of Thomas Eiten's will provided as follows:

"5. Upon the death of my wife, the said Elizabeth Eiten, I give and devise to Edward W. Eiten, my son, for and during the term of his natural life, the right to use, income and profits from the following described real estate, to-wit: (description omitted), and the said Edward W. Eiten shall keep all taxes levied and assessed against said premises fully paid, keep the improvements thereon in good repair, and not incumber by mortgage or otherwise his interests in and to said above described premises.

Upon the death of my son, Edward W. Eiten, I give and devise, to my son, Robert B. Eiten, S.J. the remainder interest in the lands herein above described and given to my son Edward W. Eiten for life, with the expressed understanding that the said Robert B. Eiten, S.J., shall cause to be paid to my Grandson, Wesley Wenzel Eiten, within one year after the date of death of the said Edward W. Eiten, the sum of Five Thousand ($5000.00) Dollars, and said

bequest of $5000.00 shall be considered a lien against said last described premises until fully paid."

The codicil of Thomas Eiten executed in January 1947, provided in part as follows:

"I do hereby revoke all that part of Clause Five (5), in my said last will and testament commencing with the words, Upon the death of my son Edward W. Eiten and ending with the words fully paid, immediately preceding Clause Six (6) of said will.

And it is my will and I give, devise and bequeath, the remainder interest for the lands herein devised to my son, Edward W. Eiten, for life, to the heirs at law of the said Edward W. Eiten, share and share alike, at the date of his, the said Edward W. Eiten's death."

The will and codicil of Thomas Eiten were admitted to probate and the estate procedure was finished by order of the Circuit Court of La Salle County on August 22, 1949.

Elizabeth Eiten, the life tenant described in paragraph 4 of the will of Thomas Eiten, died on December 31, 1948. The father of plaintiff, Edward W. Eiten, died on July 9, 1975, leaving a will dated April 9, 1949, which provided, in part, as follows:

"SECOND: I give and bequeath the sum of Five Thousand ($5000.00) Dollars to my son, Wesley Wenzel Eiten.

THIRD : All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever kind or nature and wheresoever situated, I give, devise and bequeath to my wife, Myra Eiten, absolutely and in fee simple.

FOURTH: I nominate, constitute and appoint my wife, Myra Eiten, Executor of this, my Last Will and Testament, and I request that as such Executor she only be required to give her personal bond."

On or about July 18, 1975, Myra Eiten filed a petition for probate of the will of Edward W. Eiten and for letters testamentary in the Circuit Court of Cook County, Illinois.

On September 17, 1975, plaintiff filed a complaint for partition and other relief in the Circuit Court of La Salle County, Illinois, alleging ownership of an undivided one-half interest in the real estate devised under paragraph 5 of the will of Thomas Eiten (executed in 1945), as modifed by the codicil (executed in 1947) of Thomas Eiten. Plaintiff's complaint named as defendants Myra M. Eiten, individually and as executor of the last will and testament of Edward W. Eiten, deceased, Del Monte Corporation, and Northern Illinois Gas Company.

Plaintiff's complaint, as amended, alleged that plaintiff and defendant Myra Eiten each owned, under the will and codicil of Thomas Eiten, an

undivided one-half interest, as tenants in common in fee simple, in certain real estate. The complaint further alleged that, on or about September 10, 1974, Edward E. Eiten entered into a farm lease with defendant Del Monte Corporation, which farm lease included the real estate to which plaintiff was asserting ownership rights and that, on or about September 1, 1975, defendant Del Monte Corporation made a payment in the sum of $7,110 to defendant Myra Eiten, individually and as executor of the last will and testament of Edward E. Eiten, deceased, and that defendant Del Monte Corporation would be making further such payments to defendant Myra Eiten. Plaintiff's complaint further alleged that on or about December 3, 1960, defendant Northern Illinois Gas Company had paid the sum of $8,000 to Edward W. Eiten and defendant Myra Eiten in consideration of a perpetual easement in the property which plaintiff was asserting ownership rights. Plaintiff's complaint prayed for the following relief: (a) a partition of the premises, (b) an accounting from defendant Myra Eiten for lease payments received from Del Monte Corporation, (c) an order requiring defendant Del Monte Corporation to pay to plaintiff his proportionate share of future lease payments, and (d) an accounting from defendant Northern Illinois Gas Company for payments made in acquiring an easement over the premises, or, in the alternative, a declaration that the easement is null and void as against the rights of plaintiff.

On November 12, 1975, defendant Myra Eiten, individually and as executor of the last will and testament of Edward W. Eiten, deceased, filed a motion for summary decree in her favor, on the ground that the will and codicil of Thomas Eiten vested fee simple title to the real estate in question in Edward W. Eiten and that title to such property passed to defendant Myra Eiten under the will of Edward Eiten. On January 30, 1976, the trial court entered a summary decree in favor of defendant Myra Eiten, on the ground that the Rule in Shelley's Case applied to the provisions of the will and codicil of Thomas Eiten, so as to vest fee simple title to the property in question in Edward W. Eiten, subject to a life estate in Elizabeth Eiten.

On February 10, 1976, plaintiff filed notice of appeal from the summary decree. On February 13, 1976, defendant Northern Illinois Gas Company filed a motion for summary decree, asserting much the same grounds as had defendant Myra Eiten's motion for summary decree. The motion of defendant Northern Illinois Gas Company has not been argued nor decided by the trial court. However, defendant Northern Illinois Gas Company did seek, and was granted, permission to intervene as a defendant-appellee in this appeal, in support of the position of Myra Eiten. Defendant Del Monte Corporation has not participated in this appeal.

As we have indicated, the only issue presented for review was the nature of estate which plaintiff inherited, if any, from Thomas Eiten.

■■ In the case of *Arnold v. Baker* (1962), 26 Ill. 2d 131, 185 N.E.2d 844, the Illinois Supreme Court considered arguments concerning the application of the Rule in Shelley's Case to a grant in a deed, executed in 1908, where the express life tenant died in 1957. The Illinois Supreme Court there stated (at page 134):

> "Although abolished in Illinois in 1953, (Ill. Rev. Stat. 1955, chap. 30, pars. 186, 187), the rule was in force when the present deed was executed and delivered. It must be given effect, therefore, if it is applicable to the facts. It provides, briefly, that when a life estate is given to a person, followed by a remainder to his heirs, the heirs take nothing, but the life tenant takes the entire fee. (*Orme v. Northern Trust Co.*, 25 Ill. 2d 151. Docket Nos. 36509, 36510, 36512; *Vangieson v. Henderson*, 150 Ill. 119.) The word 'heirs,' when used in its technical sense, refers to all those persons generally who inherit from the ancestor, and when so used defines the extent or quality of the estate conveyed and does not vest any interest in the ancestor's kin. (*Richardson v. Roney*, 382 Ill. 528.) Being a word of art, its fixed legal meaning is presumed to have been intended unless it clearly appears from the instrument itself that a more restrictive group was anticipated, (*Carpenter v. Hubbard*, 263 Ill. 571; *Hege v. Provident Mutual Life Ins. Co.*, 341 Ill. 559; *Lydick v. Tate*, 380 Ill. 616,) and when the word 'heirs' is determined to have been used in its unrestricted sense, the rule in *Shelley's* case, in effect, converts the ancestor's interest into a fee without regard to the interest which the grantor expected him to take. *Porter v. Cutler*, 380 Ill. 215; *Hollenbaugh v. Smith*, 296 Ill. 558."

■■ The court in *Lydick v. Tate* (1942), 380 Ill. 616, 44 N.E.2d 583, outlined the procedure for application of the Rule in Shelley's Case as follows (at page 623):

> "The first question to be determined, is the intention expressed by the testator in the language used by him in * * * his will. It is fundamental that in determining whether the rule in *Shelley's case* applies, the language of the will must be first construed by the application of ordinary rules of construction. Such construction cannot be determined from any consideration of the rule in *Shelley's case*. In determining the intention of the testator, the rule in *Shelley's case* must be wholly disregarded. (*Meeker v. Steepleton*, 309 Ill. 337; *Hollenbaugh v. Smith*, 296 Ill. 558; *Peacock v. McCluskey*, 296 id. 87.) That rule cannot properly influence the construction of the will or be given consideration in determining

the intention of the testator. It is a rule of property and not of construction. (*Havely v. Comerford*, 343 Ill. 90; *Gruner v. Rice*, 333 id. 112; *Deemer v. Kessinger*, 206 id. 57.) Whether the rule in *Shelley's case* applies, can only be determined, after the intention of the testator has been properly ascertained in accordance with settled rules of interpretation."

In the instant case, Thomas Eiten's will devised a life estate in the lands in question to Edward W. Eiten, and "the remainder interest in the lands herein devised to my son, Edward W. Eiten, for life, to the heirs at law of the said Edward W. Eiten, share and share alike, at the date of his, the said Edward W. Eiten's death." Thomas Eiten's intention in this devise must be determined according to settled rules of interpretation, and without regard to the Rule in Shelley's Case. Thomas Eiten's use of the word "heirs" is presumed to be in the technical sense. If, after construction of this devise, it is determined that Thomas Eiten used the term "heirs" in the technical sense, then the Rule in Shelley's Case would apply to vest a fee estate in Edward W. Eiten, and to defeat plaintiff's cause of action. If, on the other hand, it is found that Thomas Eiten did not use the term "heirs" in the technical sense, then the Rule in Shelley's Case would not apply to the devise, and plaintiff would prevail. Plaintiff contends that the language used in the will prevents the application of the rule.

■■ The answer to plaintiff's arguments in this case is noted in the opinions of the Illinois Supreme Court, notably, in *Cook v. Sober* (1922), 302 Ill. 498, 135 N.E. 60, where the court considered the application of the Rule in Shelley's Case to the following devise (at page 499):

> "* * * I give to my wife, Mary E. Cook, one-half of the income of my estate during her natural life and the other half to my daughter, Lila A. Cook, and should she live after her mother she is to use it all while she lives and her heirs may divide it equal among them after her death."

The *Cook* court concluded that the Rule in Shelley's Case applied to that devise to vest a fee simple title in Lila A. Cook. It is interesting to note that the devise in the *Cook* case, speaking generally, contained the same limitation as the devise in the case before us, and that the *Cook* devise is technically less precise than the devise in the instant case. The Supreme Court held in the *Cook* case (at pages 503-04) that:

> "There is no word in this will which indicates that the testator used the word 'heirs' to designate a class of persons who would stand in the relation of heirs-at-law to Lila A. Cook at her death who would not take in the character of heirs and by descent from her. They are to take on account of their relation as heirs and constitute that undefined class embracing the whole inheritable

blood. The added qualification that they may divide the estate equally among them is not sufficient to change the character in which they would take as heirs. It means only that the heirs are to have equal rights as heirs and in that character."

While we recognize that *Cook* may have been the subject of academic criticism, so far as we are able to determine the decision has never been overruled, and would appear to be controlling in this Court since it represents a determination of the Supreme Court on the issue before us. If there were no Supreme Court decisions which made the Rule in Shelley's Case applicable to our case and documents executed before the 1953 termination of the effective implementation of the Rule in Shelley's Case our decision would have been different. We do not, however, have the privilege of rejecting the interpretation of the Illinois Supreme Court as to the application of the Rule in Shelley's Case under the 1953 statutory enactment, since the Act was not made retroactive and is recognized by Illinois Supreme Court precedents as applicable to wills of decedents dying prior to 1953.

Plaintiff cites the case of *Bolon v. Dains* (1964), 54 Ill. App. 2d 64, for the proposition that *Cook* is no longer authoritative. *Bolon*, however, did not involve the Rule in Shelley's Case. *Bolon* involved the construction of a devise, which employed the phrase "share and share alike," of joint life interests to certain persons, with the remainder over to the "heirs of the body" of the life tenants after the death of the last to die of the joint life tenants. We, therefore, do not agree that the *Bolon* decision could have affected the determination in *Cook* case by the Illinois Supreme Court.

For the reasons stated, therefore, we conclude that the judgment of the Circuit Court of La Salle County was in accordance with the determination by the Supreme Court of this State and should be affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.